# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

FILED
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By cramirez at 4:28 pm, Feb 23, 2011

| | |
|---|---|
| In the matter of: | |
| | Adversary Proceeding |
| BRIAN H. CORLEY | |
| MISTY S. CORLEY | Number <u>10-4039</u> |
| (Chapter 7 Case Number <u>10-40181</u>) | |
| *Debtors* | |
| | |
| JAMES L. DRAKE, JR., | |
| TRUSTEE | |
| *Plaintiff* | |
| | |
| v. | |
| | |
| CITIZENS BANK OF EFFINGHAM, | |
| OCWEN LOAN SERVICING, LLC, | |
| Successor in Interest to TAYLOR BEAN | |
| & WHITAKER MORTGAGE | |
| CORPORATION, and | |
| MORTGAGE ELECTRONIC | |
| REGISTRATION SYSTEMS, INC., | |
| Individually and as Nominee for | |
| Citizens Bank of Effingham | |
| *Defendants* | |

## <u>MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Defendants have moved for summary judgment in this case. The facts are

substantially similar to those in <u>Drake v. Citizen's Bank of Effingham, Ocwen Loan Servicing, LLC, and Mortg. Elec. Registration Sys., Inc.</u>, Case No. 10-4033, Dckt. No. 48 (February 7, 2011) (Davis, J.) ("Companion Case"). Accordingly, while Findings of Fact specific to this case must be entered, the Court will reach the same legal conclusion for reasons explained in that prior case.

Debtors purchased real property in 2006. To complete the transaction, they borrowed the purchase money from Citizen's Bank of Effingham ("CBE"), executed a promissory note for the borrowed amount (the "Note"), and executed a deed to secure debt as security for that loan (the "Security Deed"). The Security Deed named Mortgage Electronic Registration Systems, Inc. ("MERS")[1] as grantee and nominee for CBE and its successors. The Note was transferred multiple times, with different entities taking possession, ownership, and servicing rights at different times. Ownership and possession of the Security Deed were transferred at least once. When Debtors filed Chapter 7, the Trustee commenced an adversary proceeding to determine the extent, validity, and priority of the Security Deed, asserting that the Note was unsecured. The Defendants have moved for

---

[1] According to William Hultman, Treasurer of MERS, "MERS was created by the banking industry to streamline the mortgage transfer process by using electronic commerce to eliminate paper. . . . Mortgage lenders, banks, insurance companies, and title companies pay an annual fee to become members of MERS. MERS members contractually agree to appoint MERS to act as their common agent, or nominee, and to name MERS as the mortgagee of record (or grantee on a deed of trust or security deed) in a nominee capacity on all recorded security instruments for loans registered on the MERS System. Once MERS becomes the mortgagee of record (or grantee on a deed of trust or security deed), it remains such even when beneficial ownership interests in the promissory note or servicing rights are transferred. MERS members electronically track the transfer of beneficial ownership interests and servicing rights of MERS registered loans on the MERS System are tracked electronically in the MERS System. As long as the transfer of beneficial ownership interests or servicing rights involves a MERS member, MERS remains the mortgagee and continues to act as nominee for the new note-holder/servicer." <u>Hultman Affidavit</u>, Dckt. No. 26-3, ¶¶ 5-9.

summary judgment, alleging that there is no genuine issue of material fact, and that the Note remains secured by the real property. Based on the evidence and applicable authorities I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

On June 5, 2006, Debtors executed the Note in favor of CBE in exchange for a loan in the amount of $88,800.00. Defendant's Facts, Dckt. No. 27, ¶ 1; Plaintiff's Response, Dckt. No. 39, ¶ 1. The Note was secured by real property known as 522 Goshen Road, Rincon, Georgia, 31326 (the "Property"). Id. At the closing, Debtors executed the Security Deed, naming Debtors as "Borrowers" and "Grantors," CBE as "Lender," and MERS as "Grantee." Defendant's Facts, Dckt. No. 27, ¶ 2; Plaintiff's Response, Dckt. No. 39, ¶ 2. The Security Deed further provided that MERS would act as "nominee for Lender and Lender's successors and assigns." Defendant's Facts, Dckt. No. 27, ¶ 3; Plaintiff's Response, Dckt. No. 39, ¶ 3. The Security Deed specifically identifies the Note by borrower, property, date, and amount, and it provides that the Property is collateral for the Note. Security Deed, Dckt. No. 28-2.

### A. The Note

The Note was executed in favor of CBE, and CBE took possession of the Note at the time of the execution. Defendant's Facts, Dckt. No. 27, ¶ 2; Plaintiff's Response, Dckt. No. 39, ¶ 2. MERS had entered into a Third Party Originator ("TPO") agreement with

Taylor, Bean, & Whitaker Mortgage Corp. ("TBW"), giving TBW the ability to partner with institutions (that were not members of the MERS system) to originate loans for TBW under the MERS system. Hultman Affidavit, Dckt. No. 26-3, ¶ 10; TPO Agreement, Dckt. No. 26-3, exhibit 2 thereto. CBE originated the Note, but assigned all its rights and interests in the Note to TBW. Transfer Letter, Dckt. No. 26-1, exhibit 4 thereto. TBW took possession of the Note, and indorsed the Note (pursuant to a power of attorney) from CBE to TBW. Note, Dckt. No. 28-1; Defendant's Facts, Dckt. No. 27, ¶¶ 10, 11; Power of Attorney, Dckt. No. 26-1, exhibit 9 thereto. TBW then indorsed the Note in blank. Note, Dckt. No. 28-1; Defendant's Facts, Dckt. No. 27, ¶ 12; Plaintiff's Response, Dckt. No. 39, ¶ 12. Such an indorsement is consistent with Federal Home Loan Mortgage Corporation ("Freddie Mac") requirements. Defendant's Facts, Dckt. No. 27, ¶ 13; Plaintiff's Response, Dckt. No. 39, ¶ 13.[2] On or about August 14, 2006, Freddie Mac became the record owner of the Note, and TBW remained the servicer of the loan. Defendant's Facts, Dckt. No. 27, ¶¶ 16, 17; Meyer Affidavit, Dckt. No. 26-5, ¶ 6.

On August 4, 2009, Freddie Mac terminated TBW's status as an approved Freddie Mac servicer. Defendant's Facts, Dckt. No. 27, ¶ 20; Plaintiff's Response, Dckt. No. 39, ¶ 20. Thereafter, in August of 2009, the servicing rights were transferred to Ocwen Loan

---

[2] I note that while Plaintiff's response disputes many of Defendants' proposed facts, the issues raised are either immaterial or unfounded, leaving no "genuine issue of material fact." *See* Defendant's Reply, Dckt. No. 44. I take this opportunity to acknowledge receipt of the Trustee's Surreply, Dckt. No. 46, and Surreply, Dckt. No. 47. The arguments raised therein do not change my analysis.

Servicing, LLC ("Ocwen").[3] <u>Defendant's Facts</u>, Dckt. No. 27, ¶¶ 21, 22; <u>Plaintiff's Response</u>, Dckt. No. 39, ¶¶ 21, 22.

### B. The Security Deed

On June 5, 2006, Debtors executed the Security Deed, naming MERS as "grantee under this Security [Deed]" and as "nominee for Lender and Lender's successors and assigns." <u>Security Deed</u>, Dckt. No. 28-2, pp. 1, 3. The Security Deed granted MERS the power of sale, and "the right to exercise any or all of [Lender's, and Lender's successors and assigns'] interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security [Deed]." <u>Id.</u> at p. 3. The Security Deed was recorded in the Office of the Clerk of Superior Court of Effingham County on or about June 6, 2006. <u>Defendant's Facts</u>, Dckt. No. 27, ¶ 5; <u>Plaintiff's Response</u>, Dckt. No. 39, ¶ 5. The Security Deed specifically contemplates that the Note may be sold "together with this Security [Deed]" more than once. <u>Security Deed</u>, Dckt. No. 28-2, ¶ 20. The Security Deed was transferred to Ocwen on or about February 5, 2010. <u>Defendant's Facts</u>, Dckt. No. 27, ¶ 29; <u>Plaintiff's Response</u>, Dckt. No. 39, ¶ 29.

### C. The Note and Security Deed Together

The Note and Security Deed were executed together in favor of CBE and

---

[3] The record contains references to the identity of the custodian(s) who were in actual physical possession of the documents from time to time. I have not referenced that line of custody because the identity of a mere custodian, as contrasted with the owner or servicer, is irrelevant to the secured status of this obligation.

MERS (respectively) at the inception of the loan. The Security Deed specifically identifies the Note by borrower, property, date, and amount, and provides that it is granted to secure payment on the Note. The Note was sold and transferred multiple times, eventually ending up in the possession of Ocwen. MERS, as nominee for CBE and its assigns, remained the Grantee under the Security Deed until MERS transferred the Security Deed to Ocwen. At that time, the Note and the Security Deed were physically united.

The transfer of the Security Deed from MERS to Ocwen occurred on February 5, 2010, not quite two weeks after Debtors filed their Chapter 7. The Trustee now alleges that the Note is unsecured because at some point at or after the inception of the loan, the Note and Security Deed were "split," and that the post-petition transfer of the Note and the Security Deed violated the automatic stay.

## CONCLUSIONS OF LAW

### Standard of Review

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 (Summary Judgment) applicable in adversary proceedings such as this one. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *See* Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (applying a linguistically different, but substantively identical legal standard). The moving party has the burden of

demonstrating that there is no dispute as to any material fact. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 156 (1970).

> Once this burden is met, the nonmoving party must present specific facts that demonstrate that there is a genuine dispute over material facts. Finally, a court reviewing a motion for summary judgment must examine the evidence in light most favorable to the non-moving party, and all reasonable doubts and inferences should be resolved in the favor of the non-moving party.

<u>In re Williamson</u>, 414 B.R. 895, 899 (Bankr. S.D. Ga. 2009) (Davis, J.) (citing <u>In re Davis</u>, 374 B.R. 362, 364 (Bankr. S.D. Ga. 2006) (Davis, J.)).

## <u>The Note is Fully Secured</u>

Because the facts in the Companion Case are squarely on point with the facts in this case, I adopt the Conclusions of Law enunciated in <u>Drake v. Citizen's Bank of Effingham, Ocwen Loan Servicing, LLC, and Mortg. Elec. Registration Sys., Inc.</u>, Case No. 10-4033, Dckt. No. 48 (February 7, 2011) (Davis, J.).[4] I hold here as I held in that case, that the Note is fully secured.

---

[4] I adopt the Conclusions of Law as stated in the Companion Case, noting a few minor factual differences which do not affect the outcome of the case:
1. The dates of the execution of the Security Deed and the Note are different;
2. The date of the recording of the Security Deed is different; and
3. BB&T (as custodian) never transferred possession of the Note to Ocwen, but rather sent it directly to Ellis, Painter, Ratterree & Adams LLP, the law firm representing Ocwen and MERS.

<u>O R D E R</u>

Pursuant to the foregoing Findings of Fact and Conclusions of Law IT IS THE ORDER OF THIS COURT that Defendants' Motion for Summary Judgment is GRANTED. The Note, secured by the Security Deed, is fully secured.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 23rd day of February, 2011.